DOCKET NO. 17-394

MICHAEL GEORGE SHELLEY

VERSUS

DITECH / SHELLPOINT


DISPUTE OF DEBT OWED

ON 2808 Rose Dr. Gretna, LA 70056

NOW INTO COURT, comes Petitioner Michael George Shelley a person of the full age of majority and a resident of Jefferson parish,

1.

Ditech Account # 3543 and Shellpoint Account # 9776 (hereinafter referred to as CREDITOR'S) violated the FDCPA (Fair Debt Collection Practices Act). On the Petitioner's credit report has been invalidated and therefore the account should have never been on the credit reports nor subsequently placed on the credit report after the accounts were invalidated. For this violation, fines are due in the amount of $1,000 per account, totaling $2,000. In addition, since the debt is invalidated it is no longer owed and Petitioner requests that the court enforces specific performance of having CREOITOR write a letter to the credit reporting agency requesting the account be completely removed immediately.

2.

The following is the information about the FDCPA violation and reasons for the request for enforcement of specific performance account removal actions: CREDITOR Ditech Account # 3543 from the PETIONER's credit report, see Exhibit A. The balance amount is listed as $24,636. To ensure that this account was valid and therefore were in fact debts legally owed, a validation letter was sent to CREDITOR on JUNE 10,2016, see Exhibit B. All debts must be valid to be on a credit report. In this validation letter, the account information from A credit report was made clear to CREDITOR and requests were made to ensure that CREDITOR was in fact the holder of the original note referenced by the credit report account. It is CREDITOR's task to keep its records and. make presentment of the indenture instrument relating to an account they placed on credit reports and- not the task of the debtor (Petitioner) to do so. So, no presentment of any kind was made to a request that the indenture instrument be presented.

3.

This lack of presentment, see Exhibit C, means that the debt is dishonored and therefore no debt is currently owed. This means that CREDITOR has violated the UCC, see Exhibit c, and the debt is no longer owed if in fact it ever was. By not validating the debt with an appropriate response, CREDITOR has

# EXHIBIT C

broken the United States code section which is the FDCPA, and so fines are due in the amount of $1,000, see Exhibit E. Validation of a debt must occur within 30 days and there was no validation, see Exhibit D'

4.

CREDITOR, as a claimed debtor, must be the holder in due course of the note they claim to be owed. The explanation of what holder of the note means is simple. The debtor must physically hold the note and present it upon request. A copy will not be sufficient. Copies of infinite number can be made of debt instruments and so these could be presented by uncountable claimed debtors; this is why only the original note is accepted as proof of indebtedness. To properly handle bookkeeping of this account so that no errors had been made, this validation request was made to ensure the debt was in fact legally owed. Since even now CREDITOR could not present the original note, there is no debt owed. Specific Performance by CREDITOR is requested by PETIONER that CREDITOR write all 3 credit reporting agencies and request this account be removed from all credit reports and never reported again under CREDITOR's name or any other creditor. [n short, no note means no debt. PETIONER requests the court to enforce that CREDITOR will request the removal of this account from all 3 credit report agencies immediately as specific performance.

5.

Lest there be any confusion on whether the FDCPA applies to CREDITOR as a debt collector, the Consumer Financial Protection Bureau (CFPB) is the government agency that oversees the implementation of the FDCPA and defines who fits the qualifications of debt collector in a bulletin, see Exhibit F. The CFPB defines debt collector broadly and includes creditors into the category with other designees that the CFPB collectively calls "service providers" Therefore, CREDITOR , as claiming to be in service of this debt (which clearly they are not by not being able to present the original indenture instrument), and they must follow the letter of the law as-provided in the FDCPA. CREDITOR is a debt collector as defined by the CFPB and therefore the FDCPA.

6.

UCC Negotiable Instruments, See Exhibit G, explains in order to enforce a debt instrument it has to have certain elements to be a negotiable instrument one of which is that is the one and only original in existence so that forgeries and copies cannot be used to satisfy these requirements. It clearly states ""negotiable instrument" means an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order". The important word here in the quote is "an". A note must be singular, "an"; only one note can exist, one promise to pay, or it is a copy, counterfeit or a forgery; which are not then negotiable instruments and do not need performance. But no law is needed here, only logic, thought this law covers the point too; the logic reality is that a copy is not evidence of anything unless, the original sits beside the copy at the same time as evidence that the copy is in fact a copy. How else can one know a copy is a copy? The only way logically is that the copy must sit side by side with the original document and this must happen in the courtroom when this case goes to trial or this debt is being collected illegally and statutory, compensatory and punitive fines and damages are due in this case.

7.

The immovable property subject of this lawsuit is scheduled for Sheriff Sale on October 25, 2017 under-Auction Information Case # 761-939. 2808 Rose Dr. Gretna, LA 70056

Petitioner requests that this sale be stopped while this debt dispute is adjudicated

WHEREFORE, Petitioner, Michael George Shelley, prays that:

1. After due proceedings, there be Judgment that the CREDITOR write a letter to the credit. Reporting agency requesting that CREDITOR Account be completely removed immediately;

2. there be Judgment that CREDITOR has violated the UCC and FDCPA, and so fines are due to the Petitioner in the amount of $2,000;

3. there be Judgment that Sheriff Sale on October 25, 2017 under Auction Information Case # 761-939, 2808 Rose Dr. Gretna, LA 70056 be stopped while this debt dispute is adjudicated;

4. and for all other general and equitable relief as the law and the nature of the case may permit

Respectfully submitted:

*Michael P. Shelley*

Michael George Shelley

2808 Rose Dr. Gretna, LA 70056

504-784-4845

Please serve:

DEAN MORRIS Attorney for;

Ditech / Shellpoint

1505 North 19th Street

MONROE, LOUISIANA 71201

Att; NICHOLAS G. GREST

SSN: XXX-XX-2241
Your SSN has been masked for your protection.

You have been on our files since 01/01/1993
Date of Birth: 03/31/1960

**Names Reported:** MICHAEL G. SHELLEY, MICHAEL SHELLY and MIKA SHELLEY

**Addresses Reported:**

| Address | Date Reported |
|---|---|
| 5031 RIVER RD, NEW ORLEANS, LA 70123-5313 | 01/31/2008 |
| 3720 LAKE VILLA DR, METAIRIE, LA 70002-4332 | 11/02/2016 |
| 6060 OXFORD PL, NEW ORLEANS, LA 70131-4046 | 03/01/2006 |
| 300 JACKSON ST, MANDEVILLE, LA 70448-6019 | 05/15/2006 |
| 457 SALA AVE, WESTWEGO, LA 70094-3654 | 06/12/2017 |
| 5031 RIVER RD, GRETNA, LA 70056 | 02/29/2008 |
| 6060 OXFORD PL, GRETNA, LA 70056 | 09/30/2007 |
| 2631 RUE WELLER, MANDEVILLE, LA 70448-2358 | 07/16/2007 |
| 6922 MILNE BLVD, NEW ORLEANS, LA 70124-2340 | |
| 1160 AMERICA ST, MANDEVILLE, LA 70448-4202 | 02/01/2006 |

**Telephone Numbers Reported:**

(504) 784-4845   (504) 232-5803   (504) 394-1986   (504) 272-0534   (504) 729-0146   (504) 782-5387

The information regarding adjustable rate mortgages was obtained from public records and appears on your report. TransUnion uses a vendor to collect Adjustable Rate Mortgage ("ARM") information from public record sources. This ARM data may be included in your report when it is requested by TransUnion customers qualified to receive it. The information was obtained from the Recorder's Office in the jurisdiction and state specified. None of these items contains adverse information; they are simply a listing of the information filed in the Recorder's Office concerning your adjustable rate mortgage.

Typically, creditors report any changes made to your account information monthly. This means that some accounts listed below may not reflect the most recent activity until the creditor's next reporting. This information may include things such as balances, payments, dates, remarks, ratings, etc. The key(s) below are provided to help you understand some of the account information that could be reported.

**Rating Key**
Some creditors report the timeliness of your payments each month in relation to your agreement with them. The ratings in the key below describe the payments that may be reported by your creditors. Please note: Some but not all of these ratings may be present in your credit report.

**Remarks Key**
Additionally, some creditors may notate your account with comments each month. We refer to these creditor comments as 'Remarks'. The key below gives the descriptions of the abbreviated remarks contained in your credit file. Any remark containing brackets >< indicates that this remark is considered adverse.

| AID | ACCT INFO DISPUTED BY CONSUMR | DRG | DISP INVG COMP RPT BY GRNTR | >FPI< | FORECLOSURE INITIATED |
| LMN | LOAN MODIFIED NON GOVT | PPA | PAYING PARTIAL PMT AGMT | TRF | TRANSFERRED TO ANOTHER OFFICE |
| TRL | TRANSFERRED TO ANOTHER LENDER | | | | |

Adverse information typically remains on your credit file for up to 7 years from the date of the delinquency. To help you understand what is generally considered adverse, we have added >brackets< to those items in this report. For your protection, your account numbers have been partially masked, and in some cases scrambled.

## DITECH FINANCIAL LLC

A

DITECH FINANCIAL LLC

POB 6172
RAPID CITY, SD 57709
(800) 643-0202

| | | |
|---|---|---|
| Date Opened: | 03/18/1999 | |
| Responsibility: | Individual Account | |
| Account Type: | Mortgage Account | |
| Loan Type: | CONVENTIONAL REAL ESTATE MTG | |

| | |
|---|---|
| Date Updated: | 06/16/2017 |
| Payment Received: | $0 |
| Last Payment Made: | 10/13/2015 |

| | |
|---|---|
| Pay Status: | >Account 120 Days Past Due Date< |
| Terms: | $0 per month, paid Monthly for 276 months |
| Date Closed: | 06/16/2017 |
| | >Maximum Delinquency of 120 days in 03/2016 and in 06/2017< |

High Balance: High balance of $30,400 from 04/2015 to 11/2015; $30,400 from 04/2016 to 06/2016; $30,400 from 11/2016 to 06/2017
Mortgage Info: Freddie Mac Acct #718423507
Estimated month and year that this item will be removed: 11/2022

| | 06/2017 | 05/2017 | 04/2017 | 03/2017 | 02/2017 | 01/2017 | 12/2016 | 11/2016 | 10/2016 | 09/2016 |
|---|---|---|---|---|---|---|---|---|---|---|
| Balance | $0 | $35,110 | $34,899 | $34,665 | $34,429 | $34,193 | $24,636 | $24,636 | | |
| Scheduled Payment | $0 | $472 | $472 | $472 | $472 | $472 | $472 | $472 | | |
| Amount Paid | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | | |
| Past Due | $0 | $8,677 | $8,692 | $8,860 | $7,891 | $7,658 | $7,145 | $6,112 | | |
| Remarks | TRL TRF | >FPI< | >FPI< | | PPA | PPA | PPA | >FPI< | | |
| Rating | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | X | X |

| | 08/2016 | 07/2016 | 06/2016 | 05/2016 | 04/2016 | 03/2016 | 02/2016 | 01/2016 | 12/2015 | 11/2015 |
|---|---|---|---|---|---|---|---|---|---|---|
| Balance | | | $24,636 | $24,636 | $24,636 | | | | | $24,636 |
| Scheduled Payment | | | $472 | $472 | $472 | | | | | $472 |
| Amount Paid | | | $0 | $0 | $0 | | | | | $472 |
| Past Due | | | $3,484 | $2,961 | $2,438 | | | | | $0 |
| Rating | X | X | 120 | 120 | 120 | 120 | 90 | | OK | OK |

| | 10/2015 | 09/2015 | 08/2015 | 07/2015 | 06/2015 | 05/2015 | 04/2015 | 03/2015 | 02/2015 | 01/2015 |
|---|---|---|---|---|---|---|---|---|---|---|
| Balance | $24,725 | $24,814 | $24,903 | $24,990 | $25,078 | $25,165 | $25,251 | | | |
| Scheduled Payment | $472 | $472 | $472 | $473 | $473 | $473 | $456 | | | |
| Amount Paid | $472 | $472 | $472 | $472 | $472 | $455 | $455 | | | |
| Past Due | $0 | $0 | $0 | $0 | $0 | $0 | $0 | | | |
| Rating | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK |

A

*Freddie Mac*
*Acct. #*

**SHELLPOINT**
55 BEATTIE PL
SUITE 500
GREENVILLE, SC 29601
(864) 248-8850

| | | | |
|---|---|---|---|
| Date Opened: | 03/18/1999 | Balance: | $37,272 |
| Responsibility: | Individual Account | Date Updated: | 08/31/2017 |
| Account Type: | Mortgage Account | Payment Received: | $0 |
| Loan Type: | CONVENTIONAL REAL ESTATE | High Balance: | $30,400 |

Pay Status: Current; Paid or Paying as Agreed
Terms: $498 per month, paid Monthly for 264 months

*A*

FROM:
MICHAEL G. SHELLEY, 5031 River Rd,
~~5031~~ HARAHAN, LOUISIANA 70123

TO:
DEAN MORRIS, L.L.C.
1505 North 19th Street
MONROE, LOUISIANA 71201

Attn: Collection Attorney

June 10, 2016

VIA: Certified Mail # 7015 3010 0000 9063 1923

Re: Mortgage executed on March 18, 1999, original amount of $30,400.00; 2808 Rose, Gretna, LA 70056; Ditech Account #

You are hereby in receipt of notice under the authority of the Fair Debt Collections Practices Act regarding your collection correspondence and activity regarding the property owned by me and ocated at 2808 Rose, Gretna, La 70056 and listed in the above referenced loan number that part, or all, of the alleged debt is DISPUTED and I hereby demand validation and verification, in writing, as follows:

1. An ORIGINAL signed contract and other supporting documentation that gave rise to the alleged obligation **CREDITOR** is claiming owed.

2. Statement, under penalty of perjury that:
   (a) Your client is the bonafide party in interest of the contract and will produce said ORIGINAL signed contract (#1 above) for my own and a judge's inspection should there be a trial to contest these matters.
   (b) The name and address of all persons, corporations, associations, legal firms or any other parties and entities having an interest in the collection or legal proceedings regarding the alleged debt.
   (c) As a debt collector you have not purchased evidence of debt and are proceeding with this collection activity solely in the name of the original contracting party.
   (d) You know and understand that certain clauses in a contract of adhesion are unenforceable unless the party to whom the contract is extended could have selectively rejected the clause.
   (e) You will provide written verification from the stated creditor that you are authorized to act on their behalf in this debt collection action.
   (f) **CREDITOR** has taken reasonable and prudent diligence to verify that the amount claimed owed is in fact a legitimate debt prior to instigating this action and making said claims, and that all relevant correspondence has been reviewed prior to initiating this claim.
   (g) You will prove that you are the original creditor, if in fact you claim to be, and that the United States, Federal Reserve nor any other entity besides your organization originated these funds.

3. Production of the account and general ledger statement showing the full accounting of the alleged obligation you are attempting to collect from me, signed and sworn by the person responsible for maintaining these records and having first-hand knowledge as to their accuracy and authenticity, and able to testify under oath to that effect.

June 10, 2016
Page 1 of 3

4. Under the Truth in Lending Act pursuant to *15 USC §§ 1601-1667j* (full disclosure), I have a right to know who the true party of interest in this transaction is. As such, I am asking you to stipulate whether you are the holder in due course for my promissory note. If you are not the holder, then you admit to being the servicer of this obligation.

5. Please also stipulate for the record whether or not my loan has been securitized, and if so, the name of the REMIC/Trust my loan is bundled with.

6. If my loan has been securitized, then please provide me the pooling and servicing agreement that names my loan as well as any documentation that explicitly gives you the right to service my loan as well as enforce the promissory note in the event of a foreclosure. If you are hiding these facts from my despite my request, then you are hereby notified that you are committing fraud and shall be named in a wrongful foreclosure civil action.

7. Pursuant of U.C.C. - ARTICLE 3 -§3-501 (b) 2 (1), I am entitled to demand presentation of the negotiable instrument. That demand is hereby ordered. I demand that you present for my visual inspection **MY ORIGINAL WET INK SIGNATURE PROMISSORY NOTE** This is required to establish your right of enforcement as Holder In Due Course via a chain of assignment as evidenced by the Note. Claiming to be the "the holder in due course" as a statement is insufficient proof of status and is/will be rejected. A photocopy of the documents is insufficient proof as it does not answer the question of who CURRENTLY is the rightful and lawful holder in Due Course.

8. If you are unable to provide this proof as I have requested within 30 days, then **you admit to not being a party of interest** and cannot rightfully enforce your claim under U.C.C. - ARTICLE 3 § 3-301. If you are unable to provide this proof as I have requested within 30 days, then you admit to not being a party of interest and cannot rightfully enforce your claim under U.C.C. – ARTICLE 3 § 3-301.

9. Under US Code TITLE 15 > CHAPTER 41 > SUBCHAPTER V > § 1692g part b), this debt is now officially in dispute. By law, all collection activities must cease until this matter is resolved. You are hereby given notice. Blatant disregard for this law is subject to fines by the FTC. You are advised to consult legal counsel on this matter.

10. I am giving you formal notice that failure to respond to this letter through a verified and validated proof of claim within 30 days as I have asked for, **point for point will be taken** as an <u>administrative default</u>.

<u>Please be advised</u>. A COPY of the said Note nor an Affidavit of Loss or any other forms will <u>not be acceptable</u>.

In summary, please provide me the following:
A statement admitting whether you are the holder in due course or whether you are a servicer.
A statement admitting whether you have sold my note in a pooling and servicing agreement. This is also known as securitization.
The identity of the true holder in due course for my loan. If the loan has been securitized, the name of the REMIC my loan was sold to.
The CUSIP number under which my loan was securitized to.
Make available for visual inspection my original wet ink promissory note (not a photocopy).
Please contact me in writing to arrange for an appropriate point of inspection.

Litigation is very expensive and should be avoided at all cost. This is my good faith attempt to resolve this matter

June 10, 2016
Page 2 of 3

before I am forced to litigate against your company. I am pleading with you to resolve this matter privately and civilly as to **avoid burdening our courts with this matter. If I have to, I will see you in court. This is not an idle threat.**

Contacting me again after receipt of this notice without providing procedurally proper validation of the alleged debt constitutes a scheme of fraud by advancing a writing that you know or should know is false, with the intention that the courts and/or others rely on the written communication to impair or damage my credit rating, my reputation, my standing in the community as well as intentionally inflicting financial and emotional harm upon me. I take this notice, and my rights, very seriously and expect **CREDITOR** to do the same.

In the event that this debt is not validated by you as required by the Fair Debt Collections Practices Act, you have a legal responsibility to terminate the claim and correct any negative credit reporting which may have been made in connection with this alleged debt. You may want to obtain a legal opinion on this, but I believe that would constitute a scheme of fraud if this debt were to be resold; assuming that **CREDITOR** has in fact purchased evidence of debt in this matter. I also will not respond to any future correspondence which is not signed or does not indicate who at your firm has sent the demand for payment.

I expect timely responses to the above confirmations and that they be made in writing and sent via certified mail to the address listed below. Alternately, a letter from your firm that the matter has been satisfied and a copy of the letter you sent to all 3 credit reporting agencies asking them that any adverse credit reporting relating to this transaction to be expunged by these three major credit reporting agencies immediately.

Sincerely,

*Michael G. Shelley*

**MICHAEL G. SHELLEY**

5031 River Rd.
Harahan La. 70123

---

**SENDER: COMPLETE THIS SECTION**
- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Dean Morris, LLC
1505 North 19th St.
Monroe, LA. 71201

9590 9403 0777 5215 7509 02

2. Article Number (Transfer from service label)

7015 3010 0000 9063 1923

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____ ☐ Agent ☐ Addressee

B. Received by (Printed Name): Holly Garsee
C. Date of Delivery: 6-21

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, April 2015 PSN 7530-02-000-9053    Domestic Return Receipt

June 10, 2016
Page 3 of 3



LII / Legal Information Institute

# UCC: uniform commercial code

## U.C.C. - ARTICLE 3 - NEGOTIABLE INSTRUMENTS
..PART 5. DISHONOR

### § 3-501. PRESENTMENT.

- (a) "**Presentment**" means a demand made by or on behalf of a person entitled to enforce an instrument (i) to pay the instrument made to the drawee or a party obliged to pay the instrument or, in the case of a note or accepted draft payable at a bank, to the bank, or (ii) to accept a draft made to the drawee.
- (b) The following rules are subject to Article 4, agreement of the parties, and clearing-house rules and the like:
    - (1) Presentment may be made at the place of payment of the instrument and must be made at the place of payment if the instrument is payable at a bank in the United States; may be made by any commercially reasonable means, including an oral, written, or electronic communication; is effective when the demand for payment or acceptance is received by the person to whom presentment is made; and is effective if made to any one of two or more makers, acceptors, drawees, or other payors.
    - (2) Upon demand of the person to whom presentment is made, the person making presentment must (i) exhibit the instrument, (ii) give reasonable identification and, if presentment is made on behalf of another person, reasonable evidence of authority to do so, and (iii) sign a receipt on the instrument for any payment made or surrender the instrument if full payment is made.
    - (3) Without dishonoring the instrument, the party to whom presentment is made may (i) return the instrument for lack of a necessary indorsement, or (ii) refuse payment or acceptance for failure of the presentment to comply with the terms of the instrument, an agreement of the parties, or other applicable law or rule.
    - (4) The party to whom presentment is made may treat presentment as occurring on the next business day after the day of presentment if the party to whom presentment is made has established a cut-off hour not earlier than 2 p.m. for the receipt and processing of instruments presented for payment or acceptance and presentment is made after the cut-off hour.

previous section | next section
overview
notes

© Copyright 2005 by The American Law Institute and the National Conference of Commissioners on Uniform State Laws; reproduced, published and distributed with the

C





TITLE 15 > CHAPTER 41 > SUBCHAPTER V > § 1692g

## § 1692g. Validation of debts

### (a) Notice of debt; contents

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

### (b) Disputed debts

If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

### (c) Admission of liability

The failure of a consumer to dispute the validity of a debt under this section may not be construed by any court as an admission of liability by the consumer.

### (d) Legal pleadings

A communication in the form of a formal pleading in a civil action shall not be treated as an initial communication for purposes of subsection (a).

### (e) Notice provisions

The sending or delivery of any form or notice which does not relate to the collection of a debt and is expressly required by title 26, title V of Gramm-Leach-Bliley Act [15 U.S.C. 6801 et seq.], or any provision of Federal or State law relating to notice of data security breach or privacy, or any regulation prescribed under any such provision of law, shall not be treated as an initial communication in connection with debt collection for purposes of this section.

Ask A Lawyer Online.

D



TITLE 15 > CHAPTER 41 > SUBCHAPTER V > § 1692k

# § 1692k. Civil liability

### (a) Amount of damages

Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—

(1) any actual damage sustained by such person as a result of such failure;

(2)

(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; or

(B) in the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector; and

(3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court. On a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs.

### (b) Factors considered by court

In determining the amount of liability in any action under subsection (a) of this section, the court shall consider, among other relevant factors—

(1) in any individual action under subsection (a)(2)(A) of this section, the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional; or

(2) in any class action under subsection (a)(2)(B) of this section, the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, the resources of the debt collector, the number of persons adversely affected, and the extent to which the debt collector's noncompliance was intentional.

### (c) Intent

A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

### (d) Jurisdiction

An action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs.

### (e) Advisory opinions of Commission

No provision of this section imposing any liability shall apply to any act done or omitted in good faith in conformity with any advisory opinion of the Commission, notwithstanding that after such act or omission has occurred, such opinion is amended, rescinded, or determined by judicial or other authority to be invalid for any reason.

Ask A Lawyer Online.
Get an Answer ASAP!

Donations cover only 20% of our costs.

Ads by Google



Consumer Financial
Protection Bureau

1700 G Street, N.W., Washington, DC 20552

**CFPB Bulletin 2013-08 (Fair Debt Collection Practices Act and the Dodd-Frank Act)**

**Date:** July 10, 2013

**Subject: Representations Regarding Effect of Debt Payments on Credit Reports and Scores**

In response to recent practices observed during supervisory examinations and enforcement investigations, the Consumer Financial Protection Bureau (CFPB or Bureau) issues this bulletin to provide guidance to creditors, debt buyers, and third-party collectors about compliance with the Fair Debt Collection Practices Act (FDCPA)[1] and sections 1031 and 1036 of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 (Dodd-Frank Act)[2] when making representations about the impact that payments on debts in collection may have on credit reports and credit scores.

### A. Legal Background

The Dodd-Frank Act granted the CFPB authority to issue regulations and guidance related to the FDCPA and Title X of the Dodd-Frank Act.[3] The FDCPA makes it illegal for a debt collector to "use any false, deceptive, or misleading representation or means in connection with the collection of any debt."[4] In addition, it is illegal for any covered person or service provider of consumer financial products or services to engage in any deceptive act or practice in violation of the Dodd-Frank Act.[5] The FDCPA and the Dodd-Frank Act together prohibit covered persons or service providers, including debt collectors, from engaging in deception while collecting or attempting to collect on consumer debts.

### B. Deceptive Claims Regarding Debt Payments and Credit Reports and Scores

While communicating with consumers, creditors and debt buyers (collectively "debt owners") and third-party debt collectors often make material representations intended to persuade consumers to pay debts in collection.[6] Such representations may include, but are not limited to, statements regarding the relationship between:

- Paying debts in collection and improvements in a consumer's credit report;
- Paying debts in collection and improvements in a consumer's credit score;
- Paying debts in collection and improvements in a consumer's creditworthiness; or

---

[1] 15 U.S.C. § 1692 *et seq.*
[2] 12 U.S.C. §§ 5531, 5536.
[3] 12 U.S.C. § 5512(b).
[4] 15 U.S.C. § 1692e.
[5] 12 U.S.C. §§ 5531(a), 5536(a)(1)(B).
[6] For the purposes of this bulletin, "debts" refers to debts in collection.

consumerfinance.gov

F

- Paying debts in collection and the increased likelihood of a consumer receiving credit or more favorable credit terms from a lender.

Representations like those discussed in this bulletin are likely to be important to many consumers who view credit reporting as an important determinant of their future access to credit and other opportunities. Based on its supervision, enforcement, and other activities, the CFPB is aware that these types of representations are being made and is concerned that some of them may be deceptive under the FDCPA, the Dodd-Frank Act, or both.[7]

### 1. Effects on Credit Reports

One example of a potentially deceptive claim concerns representations that debt owners and third-party debt collectors may make about obsolete debt, which can be defined for the purposes of this bulletin as debt that the Fair Credit Reporting Act (FCRA) prohibits consumer reporting agencies from including on credit reports for most purposes due to the length of time that has passed since a consumer initially defaulted. The FCRA imposes time limits (usually seven years) on including information about debts in certain credit reports.[8] A debt owner or third-party debt collector representing that payments on obsolete debts will result in the removal of information about the debt from the consumer's credit report may well deceive consumers, because such information likely would not have appeared on reports for most purposes even if the debt had remained unpaid.

Another example of a potentially deceptive claim involves representations that debt owners and third-party debt collectors may make about non-obsolete debts. Payments on debts in collection will change credit reports only if debt owners or third-party debt collectors furnish information about the payments to credit reporting agencies and the agencies add the information to credit files and credit reports. If debt owners or third-party debt collectors do not furnish payment information to credit reporting agencies, then it may well be deceptive for them to make representations about how debt payments will be reflected on a consumer's credit report.[9]

### 2. Effects on Credit Scores

Another potentially deceptive claim involves representations that debt owners and third-party debt collectors may make about how paying debts in collection will improve credit scores. Even assuming that debt owners and third-party collectors report payments on debts in collection to consumer reporting agencies, in light of the numerous factors that influence an individual consumer's credit score, such payments may not improve the credit score of the consumer to whom the representation is being made. Consequently, debt owners or third-party debt collectors

---

[7] Collectors who make claims are responsible for both the literal language of their representations and claims that reasonable consumers take away from those representations. *See FTC Policy Statement on Deception* (Oct. 14, 1983), *published at* 103 F.T.C. 110, 174 (1984). The CFPB is informed by the FTC's standard for deception. CFPB Supervision and Examination Manual, UDAAP 5 (Oct. 2012) (online at http://files.consumerfinance.gov/f/201210_cfpb_supervision-and-examination-manual-v2.pdf).

[8] Section 605 of the FCRA, 15 U.S.C. § 1681c. We note that there are exceptions to the general rule and, as a result, information about debts that are more than seven years old may appear under some circumstances or in certain consumer reports.

[9] *See American Express Centurion Consent Order, American Express Bank, FSB Consent Order, and American Express Travel Related Services Company, Inc. Consent Order* (collectively "American Express Consent Orders"), October 1, 2012, http://www.consumerfinance.gov/pressreleases/cfpb-orders-american-express-to-pay-85-million-refund-to-consumers-harmed-by-illegal-credit-card-practices/.

may well deceive consumers if they make representations that paying debts in collection will improve a consumer's credit score.

### 3. Effect on Creditworthiness

A third example of a potentially deceptive claim involves representations that owners of debts and third-party debt collectors may make about how paying debts in collection will improve creditworthiness or enhance the likelihood that a consumer will subsequently receive credit from a lender. Potential lenders may use a variety of sources of information to assess the creditworthiness of prospective borrowers, including credit report or credit score information. Even where they use the same information, potential lenders may assign different weight to information in evaluating the creditworthiness of prospective borrowers. The nature and extent of the impact of a payment on a particular debt in collection to a prospective borrower's creditworthiness may depend on all of the information potential lenders consider and how they weigh that information, factors that debt owners or third-party debt collectors often will not know. Debt owners or third-party debt collectors may well deceive consumers if they make representations about the nature or extent of improved creditworthiness that result from paying debts in collection.

## C. CFPB Expectations

The examples of potentially deceptive claims concerning the effect of paying debts in collection on credit reports, credit scores, and creditworthiness set forth in this bulletin are illustrative and non-exhaustive. The prevalence of these types of potentially deceptive claims is a matter of significant concern to the CFPB.

Debt owners and third-party debt collectors should take steps to ensure that any claims that they make about the effect of paying debts in collection on consumers' credit reports, credit scores, and creditworthiness are not deceptive. In the course of supervision activities or enforcement investigations, the CFPB may review communication materials, scripts, and training manuals and related documentation to assess whether owners of debts and third-party debt collectors are making these types of claims and the factual basis for them. In addition, the CFPB will assess whether additional supervisory, enforcement, or other actions may be necessary to ensure that the debt collection market functions in a fair, transparent, and competitive manner.

 

LII / Legal Information Institute

# UCC: uniform commercial code

## U.C.C. - ARTICLE 3 - NEGOTIABLE INSTRUMENTS
..PART 1. GENERAL PROVISIONS AND DEFINITIONS

### § 3-104. NEGOTIABLE INSTRUMENT.

- (a) Except as provided in subsections (c) and (d), "**negotiable instrument**" means an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:
    - (1) is payable to bearer or to order at the time it is issued or first comes into possession of a holder;
    - (2) is payable on demand or at a definite time; and
    - (3) does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain (i) an undertaking or power to give, maintain, or protect collateral to secure payment, (ii) an authorization or power to the holder to confess judgment or realize on or dispose of collateral, or (iii) a waiver of the benefit of any law intended for the advantage or protection of an obligor.
- (b) "**Instrument**" means a negotiable instrument.
- (c) An order that meets all of the requirements of subsection (a), except paragraph (1), and otherwise falls within the definition of "check" in subsection (f) is a negotiable instrument and a check.
- (d) A promise or order other than a check is not an instrument if, at the time it is issued or first comes into possession of a holder, it contains a conspicuous statement, however expressed, to the effect that the promise or order is not negotiable or is not an instrument governed by this Article.
- (e) An instrument is a "**note**" if it is a promise and is a "**draft**" if it is an order. If an instrument falls within the definition of both "note" and "draft," a person entitled to enforce the instrument may treat it as either.
- (f) "**Check**" means (i) a draft, other than a documentary draft, payable on demand and drawn on a bank or (ii) a cashier's check or teller's check. An instrument may be a check even though it is described on its face by another term, such as "money order."
- (g) "**Cashier's check**" means a draft with respect to which the drawer and drawee are the same bank or branches of the same bank.
- (h) "**Teller's check**" means a draft drawn by a bank (i) on another bank, or (ii) payable at or through a bank.
- (i) "**Traveler's check**" means an instrument that (i) is payable on demand, (ii) is drawn on or payable at or through a bank, (iii) is designated by the term "traveler's check" or by a substantially similar term, and (iv) requires, as a condition to payment, a countersignature by a

G

person whose specimen signature appears on the instrument.
- (j) **"Certificate of deposit"** means an instrument containing an acknowledgment by a bank that a sum of money has been received by the bank and a promise by the bank to repay the sum of money. A certificate of deposit is a note of the bank.

previous section | next section
overview
notes

© Copyright 2005 by The American Law Institute and the National Conference of Commissioners on Uniform State Laws; reproduced, published and distributed with the permission of the Permanent Editorial Board for the Uniform Commercial Code for the limited purposes of study, teaching, and academic research.